## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**GEORGE RICHARD MENDOZA,**

      **Plaintiff,**

**vs.**                          **CASE NO.  4:21-CV-00490-WS-MAF**

**E. L. OLDS,**
**et al.,**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, initiated this civil rights case, pursuant to 42 U.S.C. § 1983. ECF No. 1, 4. The Court provided Plaintiff liberal opportunity to amend. ECF Nos. 4, 6. Plaintiff filed a second amended complaint, ECF No. 7, which the Court screened as required under 28 U.S.C. §§ 1915(e) and 1915A. The Court construed Plaintiff's allegations liberally. Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). After careful consideration, for the reasons stated, it is recommended that the complaint be dismissed and the case be closed.

## I.    Standard of Review

A federal court is required to conduct an initial screening of a *pro se* complaint to determine whether the action: (1) is frivolous or malicious or fails to state a claim on which relief may be granted, or (2) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e). A claim is frivolous, and must be dismissed, when it "lacks an arguable basis either in law or in fact." Miller v. Donald, 541 F.3d 1091, 1100 (11th Cir. 2008). A district court also may dismiss a complaint if the facts as pled do not state a claim for relief that is plausible on its face. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although a *pro se* litigant's allegations are entitled to the benefit of liberal construction, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." GJR Invs. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds by Iqbal, 556 U.S. 662).

"Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. Conclusory allegations that "amount to nothing more than a formulaic

recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true." Iqbal, 556 U.S. at 681. To escape dismissal, the complaint must allege facts sufficient to move claims "across the line from conceivable to plausible." Id. "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'. . . The complaint's allegations must establish 'more than a sheer possibility that a defendant has acted unlawfully.'" Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting Iqbal, 556 U.S. at 678).

## II.    Plaintiff's Second Amended Complaint, ECF No. 7.

Plaintiff, an inmate of the Florida Department of Corrections, currently incarcerated at Florida State Prison, sues six Wakulla Annex corrections officers, in their individual and official capacities:

1. E. L. Olds, a male lieutenant

2. "Miller," the last name of a male lieutenant

3. K. Wilson, a male lieutenant

4. J. Chunn, a female sergeant

5. R.R. Dawsey, a female sergeant

6. "Cannon," the last name of a male lieutenant

ECF No. 7, p. 3-5. Plaintiff generally alleges a conspiracy among the defendants to retaliate against him for exercising his right to file grievances. Defendants filed erroneous disciplinary reports (DRs), placed Plaintiff in close management, and placed him on 72-hour property restriction. Id., p. 7.

According to Plaintiff, between March 12, 2021, and July 13, 2021, he filed grievances relating to certain prison conditions (corporal punishment, denial of access to the restroom, transgender PREA standard violations, retaliation against transgender inmates, and retaliation against inmates who file grievances). Id. Defendant Olds responded to most of the grievances. Id. Plaintiff also served as a witness and helped a fellow inmate, "Thornton," appeal two erroneous DRs issued by Defendants Wilson and Dawsey between June and July 2021. Id.

On July 20, 2021, Defendant Dawsey admitted to Thornton that she wrote an erroneous DR against Thornton. Plaintiff was present to hear Dawsey's admission. Id., p. 8. Plaintiff states that Dawsey's falsification of official documents violates the Florida Administrative Code. Id. Plaintiff believes this is evidence of a conspiracy between Dawsey and Wilson; and, after this, the retaliation began against Plaintiff. Id.

On July 23, 2021, Defendant Wilson moved Plaintiff to another bunk because no inmates would "be housed in the corner bunks anymore." Id.,

p. 9. Plaintiff's bunkmate was not moved; and a few days later, other inmates were moved into corner bunks. Id. Dawsey stated, "We will have to see if others are gay to then decide if they get moved." Id.

On July 26, 2021, Defendant Wilson issued Plaintiff DR #122-211288 for being in an unauthorized area. Id., p. 9. Plaintiff claims the DR was erroneous because the statement of facts did not include Dawsey as involved in any manner or as a witness. Id. Defendant Chunn did not make Plaintiff aware during the investigation process but wrote a false statement as an alleged witness against Plaintiff so he would be found guilty. Id. Plaintiff claims a conspiracy between Wilson, Dawsey, and Chunn because Chunn investigated the incident in a biased manner, but he provides no other facts to support this assertion. Id. Plaintiff claims this also violates his right to due process.

On July 28, 2021, Defendants Olds, Wilson, Chunn and another sergeant "stormed the dorm" and "locked-up the plaintiff in confinement pending investigation" with the intent to have him transferred and placed in close management. Id., p. 10.

On August 4, 2021, Defendants Miller and Cannon conspired and placed Plaintiff on 72-hour property and strip restriction without due process and in violation of the Eighth Amendment. Id., p. 10. Restricted to an

"extremely cold" cell, Plaintiff had no clothing, bedding, sheets, or blankets; had to walk on a "cold nasty floor" and was made to sleep on a steel bunk with no mattress or pillow. Id. Plaintiff was not allowed any hygiene items; and was not provided toilet paper for eight hours. Id. Plaintiff was left to clean himself with his hand and toilet water. Id., p. 11.

On August 6, 2021, Inmate Thornton was locked up by Olds, Wilson, and Chunn. Wilson and Olds addressed Thornton with anti-gay epithets, told him he should have kept his mouth shut, and that he was "going to CM with your faggot boyfriend Mendoza." Id., p. 11. Thornton received numerous DRs from the defendants. Id. In Thornton's DRs, it was alleged that Plaintiff was introducing drugs into the prison and had gang affiliations, which made Plaintiff a security threat. Id., p. 12. Although there were allegedly fourteen inmates involved, only Plaintiff and Thornton were placed on close management. Id. Plaintiff believes this is because he and Thornton are gay or transgender inmates. Id. Defendant Wilson falsely stated Plaintiff was interviewed and was instructed by Thornton to have his wife send money (membership fees) to the gang members. Id. Plaintiff denies this interview occurred. Id.

Plaintiff provides no dates or context for his allegation that Defendant Chunn made false statements that Plaintiff and Inmate Justin Bean were in

a known relationship and received mail containing drugs. Id., p. 13. Plaintiff and Bean never received a DR, were never on the same side of any dorm, and did not know each other. Id. Bean was placed on close management. Id. Plaintiff's placement on close management affected his ability to be transferred to any incentive camp. Id. Plaintiff does not state when his close management status began or how long it continued.

Based on these events, Plaintiff claims Defendants violated his First-, Fifth-, Eighth-, and Fourteenth Amendment rights. As relief, Plaintiff seeks an injunction overturning his close management status and removing it from his prison records; monetary damages in the amount of $5,500 for the 72-hour restriction and $50 for each day on close management beginning on September 3, 2021; $25,000 in punitive damages against each Defendant for a total amount of $150,000; nominal damages, and the costs of litigating this case. Id., p. 14, 18.

## III.   Discussion

Plaintiff has no standing to challenge the treatment of fellow inmates. Plaintiff's second amended complaint fails to state a claim under First- Fifth, Eighth-, and Fourteenth Amendment or for conspiracy. Namely, Plaintiff's placement on property restriction for 72 hours does not rise to the level of a deprivation of a liberty interest sufficient to state a claim under the Fourteenth

Amendment. Likewise, the facts do not support a conditions-of-confinement claim under the Eighth Amendment. Plaintiff's allegations of retaliation and conspiracy are based solely on conclusory allegations. The conspiracy claim is barred by the intracorporate doctrine. Each issue is discussed below.

A. Plaintiff Lacks Standing to Challenge the Disciplinary Reports of Other Inmates or the Confinement Status of Another Inmate.

As a preliminary matter, Plaintiff is not authorized to challenge the facts supporting a fellow inmates' disciplinary report because it would be tantamount to challenging the validity of another's disciplinary proceeding. A *pro se* inmate has no standing to raise claims on behalf of a fellow inmate. See Johnson v. Brown, 581 F. App'x 777 (11th Cir. 2014). It is well settled that a non-attorney cannot represent the interests of another individual in litigation. Guardo v. Luna, 432 F.2d 1324 (5th Cir. 1970) ("There is no constitutional guarantee that non-attorneys may represent other people in litigation.").[1] See also 28 U.S.C.A. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.") The personal right established under § 1654 "does

---

[1] The Eleventh Circuit is bound by Fifth Circuit decisions in cases before October 1, 1981. Bonner v. City of Prichard, Alabama, 661 F.2d 1206 (11th Cir. 1981).

not extend to the representation of the interests of others." <u>Timson v. Sampson</u>, 518 F.3d 870, 873 (11th Cir. 2008).

Plaintiff has no standing to challenge the statements in Thornton's DRs that he and Thornton introduced drugs into the prison, had gang affiliations, or any other allegations against him within those reports. That matter is for Thornton to appeal. Similarly, Plaintiff has no standing as it relates to any actions taken by officers against Inmate Bean.

B. <u>Fourteenth Amendment Claims</u>

Plaintiff alleges he was placed on 72-hour restriction without due process and without a DR hearing, but this fails to amount to a constitutional violation. "Prisoners do not have a liberty interest in being confined to a general population cell rather than the more austere and restrictive administrative segregation quarters." <u>Turner v. Warden, GDCP</u>, 650 F. App'x 695 (11th Cir. 2016) (internal citations and quotations omitted). "Convicted inmates have no right to a due process hearing before being punished for disciplinary infractions unless the punishment is demonstrably harsher than the ordinary conditions of prison life." <u>Jacoby v. Baldwin Cty</u>., 835 F.3d 1338, 1347 (11th Cir. 2016). Where a prisoner has been placed in disciplinary confinement, the Due Process Clause is implicated in two circumstances: (1) "when an increased restraint 'exceed[s] [his] sentence in such an

unexpected manner'" and (2) "'when a change in his conditions of confinement imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Jacoby v. Baldwin Cty., 835 F.3d 1338, 1346-47 (11th Cir. 2016) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)). Plaintiff relies on the second circumstance to support his claim.

First, it is well-settled that short-term placement in disciplinary confinement does not violate due process. Sandin, 515 U.S. at 484 (no violation in a thirty-day term); Rodgers v. Singletary, 142 F.3d 1252 (11th Cir. 1998) (no liberty interest existed when prisoner was kept in administrative confinement for two months pending the resolution of criminal charges arising from an altercation with a corrections officer); Joe v. Nelson, Case No. 5:14-CV-0184-MIT-CHW, 2014 U.S. Dist. LEXIS 87560, *8 │2014 WL 2930856 (M.D. Ga. Jun. 27, 2014) (ninety-day term of punitive confinement did not violate due process). "A relatively short term of segregation will rarely give rise to a prisoner's liberty interest in the absence of exceptionally harsh conditions." Hardaway v. Meyerhoff, 734 F.3d 740, 743 (7th Cir. 2013).

Plaintiff's allegations are presumed true at this early stage. Here, Plaintiff alleges he was placed on 72-hour property and strip restriction, which is a short term. Plaintiff was in an extremely cold cell without clothing "to maintain warm[th]," bedding sheets, blankets, hygiene items, mattress, or

pillow. ECF No. 7, pp. 10-11. He was also denied toilet paper for eight hours. Id. Nonetheless, these allegations simply do not rise to an "atypical or significant hardship" in relation to the ordinary incidents of prison life. Wilson v. Blankenship, 163 F.3d 1284, 1295 n.17 (11th Cir. 1998). Because the property restriction did not deprive Plaintiff of a liberty interest, he was not entitled to any form of due process prior to being placed in such restriction. O'Connor v. Carnahan, Case No. 3:09CV224/WS/EMT, 2012 WL 2201522, at *10 (N.D. Fla. Mar. 27, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 83232, 2012 WL 2317546 (N.D. Fla. June 15, 2012). Furthermore, these conditions do not present constitutional concerns, particularly when compared with other similar cases. See White v. Marshall, No. 2:08-cv-362-CSC, 2008 U.S. Dist. LEXIS 90351, 2008 WL 4826283, at *3-4, 9 (M.D. Ala. Nov. 5, 2008) (finding no deprivation of "the minimal civilized measures of life's necessities" where prisoner was confined for thirty days in a cell with only a drain in the floor for urinating, cold sandwiches three times a day, and no clothing except for a paper gown; twenty-four days without a mattress, blanket, wash basin, personal hygiene items, no lights, and no ventilation; and was not permitted to shower or exercise for fourteen days); Lloyd v. Briley, No. 05 C 1499, 2007 U.S. Dist. LEXIS 21247, 2007 WL 917385, at *7-8 (M.D. Ill. Mar. 23, 2007) (prisoner confined to a strip cell

with no sheets, toilet paper, or personal property for thirteen days did not give rise to procedural due process claim); King v. Frank, 328 F. Supp. 2d 940 (W.D. Wis. July 27, 2004) (where a prisoner was forced to wear a paper gown for forty days was not "an atypical and significant hardship."). Therefore, this claim should be dismissed.

C. Eighth Amendment Claims

Likewise, the 72-hour property restriction did not violate the Eighth Amendment. "A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis and internal quotation marks omitted); Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010).

In the context of the Eighth Amendment's ban on cruel and unusual punishment, "[t]he Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825,

832 (1994). The prisoner must demonstrate that the prison condition is "extreme" and "pose[s] an unreasonable risk of serious damage to the [prisoner's] future health or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). See Alfred v. Bryant, 378 F. App'x 977 (11th Cir. 2010) (finding the district court properly dismissed the case as frivolous where prisoner was relegated to disciplinary confinement for eighteen days without a mattress or properly functioning toilet and his complaints of fatigue, stiffness, soreness, lower back pain, headaches nausea, anxiety, and fear were insufficient to allege risk to health and safety).

Under the first requirement, known as the "objective component," a prisoner must prove that the condition of which he complains is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, (1992). The challenged condition must be "extreme." Id. at 9. While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. Id. at 35.

The second requirement is known as the "subjective component"; and the prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue.

Hudson, 503 U.S. at 8 (quotation marks and citation omitted). Under the deliberate indifference standard, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff's allegations fail to satisfy either element. Indeed, in Woodson v. Whitehead, the Eleventh Circuit rejected a similar argument, finding that the prisoner's "complaint fails to allege facts to satisfy either the objective 'substantial risk of serious harm' component or the subjective 'deliberate indifference' component for showing an Eighth Amendment violation." Id. at 932. Specifically, the court stated:

> Confinement without clothing (other than boxers), bedding, or hygienic materials for 72 hours during the months of April and August in Florida is not the type of extreme prison conditions that create a substantial risk of serious harm. Additionally, the fact that Warden Palmer saw the conditions in which Woodson was held during his disciplinary confinement is not enough to show that any of the defendants believed Woodson's health or safety to be at risk. Woodson failed to show that any of the defendants had subjective knowledge of a substantial risk of serious harm to Woodson.

Id. at 1289-90.

Plaintiff's allegations are similar to those made by Woodson. At no point does Plaintiff suggest he was at substantial risk of serious harm or that there was an excessive risk to his health.

To the extent Plaintiff alleges that the name-calling, verbal abuse, and any threats are sufficient to state an Eighth Amendment claim, this is not so. Derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation. Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989); see also McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts . . . resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.").

Plaintiff's Eighth Amendment claims should be dismissed as frivolous.

D. Futility of Claims Under Heck v. Humphrey

Plaintiff's due process claim as it relates to DR #122-211288 (being in an unauthorized area) is subject to dismissal pursuant to Heck v. Humphrey, 512 U.S. 477, 481 (1994) and its progeny. The claim is reliant on Plaintiff's allegation that the DR contains false statements from certain defendants. ECF No. 7, p. 9. Plaintiff does not state what punishment he received for that

DR and did not provide any evidence of the DR. Plaintiff does not admit or deny that he was in an unauthorized area. His allegation that the DR contains false statements is vague. Plaintiff gives no indication whether he challenged or appealed the DR. However, even if the Court were to find in Plaintiff's favor, this would invalidate the DR and any related consequence. As relief, Plaintiff wants to overturn his close management status and remove it from his prison records. These claims may not proceed because they are barred by Heck.

A prisoner cannot obtain monetary damages in a § 1983 action if "success would necessarily imply" that the prisoner's conviction was invalid. Heck, 512 U.S at 486-87. Heck also applies to prisoners' claims challenging prison disciplinary actions, even when the prisoner does not explicitly seek reinstatement of lost good-time credits. See Edwards v. Balisok, 520 U.S. 641, 646 (1997) (concluding that a claim for monetary damages resulting from defects in a prison disciplinary hearing which results in the loss of gain time credits is not cognizable under § 1983 until the disciplinary report is successfully overturned through habeas). Plaintiff's claim cannot survive this stage if he cannot show the DR was invalidated.

Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not

apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 561 (1974). Nevertheless, when the outcome of a disciplinary proceeding will "impose[] atypical and significant hardship on the inmate," the following due process rights must be ensured: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense. <u>Id.</u> at 563-67.

Plaintiff does not allege a violation of the <u>Wolff</u> factors. Instead, he alleges the DR contains false statements and violations of the Florida Administrative Code; however, even if this were true, it does not present a due process violation. Prison regulations are not intended to confer rights or benefits on inmates but are designed to guide correctional officials in the administration of prisons. <u>Sandin</u>, 515 U.S. at 481-82.

There is no information about the DR proceeding, whether Plaintiff attempted to appeal or did appeal, or had the opportunity to present witnesses nor is there any information about the resulting consequence upon finding Plaintiff guilty. Nonetheless, changing Plaintiff's status or removing this from his prison record cannot be accomplished via a Section 1983 action. Because the Court is unable to provide this type of relief, the due process claims warrant dismissal.

E. <u>First Amendment Retaliation Claim</u>

Plaintiff repeatedly alleges in the second amended complaint that Defendants retaliated against him for filing grievances and for assisting in the appeal of another inmate's DRs. As stated above, Plaintiff alleges he was moved from a (1) corner bunk assignment because he is transgender, while other inmates were allowed to have a corner bunk; (2) on July 26, 2021, Wilson wrote the false DR stating Plaintiff was in an unauthorized area; (2) on July 28, 2021, Olds, Wilson, and Chunn placed Plaintiff "in confinement pending [an] investigation"; and (3) on August 4, 2021, Miller and Cannon placed Plaintiff on 72-hour property and strip restriction <u>See</u> ECF No. 7.

"The First Amendment forbids prison official from retaliating against prisoners for exercising the right of free speech." <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003). To prevail on a retaliation claim, a plaintiff must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." <u>Smith v. Mosley</u>, 532 F.3d 1270, 1276 (11th Cir. 2008). "[T]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." <u>Farrow</u>, 320 F.3d 1235 at 1248.

The Eleventh Circuit has made clear that "if a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's factfinding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report." O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011). Plaintiff's retaliation claim against Wilson for filing the DR is unsupported because Plaintiff provides no facts that he was not afforded due process during the disciplinary proceeding; and he admits he was found guilty. Plaintiff also fails to demonstrate a causal relationship between Wilson's DR and any of his filed grievances.

Plaintiff's other retaliation claims also fail as they are purely conclusory and devoid of any supporting facts. See Papasan v. Allain, 478 U.S. 265, 286 (1986) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); FuQua v. Massey, 615 F. App'x 611, 613 (11th Cir. 2015) (plaintiff's "conclusory allegations that her civil rights were violated by the defendants are insufficient to survive a motion to dismiss"). For example, Plaintiff generally describes that he filed grievances over a period of time challenging prison conditions. He does not state how any of the Defendants other than Olds was the one who responded to most of the grievances or how the grievances are connected to his claims.

F.  Plaintiff's Civil Conspiracy Claims

Plaintiff claims that defendants conspired to retaliate against him for filing grievances. However, his claim fails however because of the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (*en banc*). "[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." Id. The doctrine applies to public entities such as state agencies and its personnel. See Grider v. City of Auburn, Ala., 618 F.3d 1240, 1262-63 (11th Cir. 2010) (intracorporate conspiracy doctrine barred plaintiff's § 1983 conspiracy claims against police officers); Rehberg v. Paulk, 611 F.3d 828, 854 (11th Cir. 2010) (concluding intracorporate conspiracy doctrine barred § 1983 conspiracy claim against a county employee); Dickerson v. Alachua Cnty. Comm'n, 200 F.3d 761, 767-68 (11th Cir. 2000) (concluding intracorporate conspiracy doctrine barred plaintiff's § 1985(3) conspiracy claim for interference with his civil rights).

Case 4:21-cv-00490-WS-MAF    Document 8    Filed 03/11/22    Page 21 of 22

Page 21 of 22

In the instant case, all Defendants are employees of the FDOC. No outsiders are involved. The subject of their alleged conspiracy—issuing disciplinary reports and placing Plaintiff in close management and property restriction—involved job-related functions well within Defendants' scope of employment as FDOC employees. See Grider, 618 F.3d at 1261. Therefore, the conspiracy claims should be dismissed.

Ordinarily a *pro se* plaintiff is given an opportunity to cure the defects of his complaint prior to dismissal. However, this Court provided Plaintiff liberal opportunity to amend and warned this was his final opportunity to do so because on multiple occasions, in multiple cases, Plaintiff received similar instructions and directives from the Court but failed to properly amend. Plaintiff is not entitled to multiple amendments.

## IV.    Conclusion and Recommendation

For the reasons stated above, it is respectfully **RECOMMENDED** that

1.    Plaintiff's claim challenging the basis of Thornton's disciplinary report be **DISMISSED** with prejudice for lack of standing.

2.    Plaintiff's Due Process and Eighth Amendment claims relating to Plaintiff's 72-hour restriction be **DISMISSED** with prejudice as frivolous.

3.     The remainder of Plaintiff's claims be **DISMISSED** without prejudice under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii) for failure to state a claim.

4.     That the Clerk enter judgment accordingly and **CLOSE** this case.

**DONE AND ORDERED** this 11th day of March, 2022.

<u>**s/ Martin A. Fitzpatrick**</u>
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).